IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Formation of : 
Independent School District Consisting : 
of the Borough of Highspire, Dauphin : 
County, Pennsylvania : No. 242 C.D. 2019
 : Argued: December 12, 2019
Appeal of: Highspire Education : 
Coalition : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge


OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: March 2, 2020

The Highspire Education Coalition (Coalition) appeals an order of the Court of Common Pleas of Dauphin County (trial court) denying its "Petition for Formation of an Independent School District." The trial court did so because the Secretary of Education, Pedro A. Rivera (Secretary), determined that the petition to transfer students residing in the Borough of Highspire out of the Steelton-Highspire School District and into the adjacent Middletown Area School District lacked merit from an educational standpoint. The Secretary so ruled despite finding that the transferring students would receive a better education in the Middletown School District. The Coalition contends that the Secretary erred in basing his decision on financial concerns, not educational merit. For the following reasons, we agree with the Coalition and reverse and remand the matter to the trial court.

**Background**

On August 15, 2014, the Coalition[1] petitioned the trial court to establish an independent school district for the purpose of transferring Highspire students presently enrolled in the Steelton-Highspire School District to the Middletown Area School District. Steelton-Highspire has approximately 1,200 students from Steelton and 276 students from Highspire. Middletown has approximately 2,300 students.

The Coalition's petition offered several reasons for the transfer. Steelton-Highspire students do not show expected educational progress, as measured annually by the Department of Education, and they underperform on the Pennsylvania System of School Assessment (PSSA) tests. By contrast, Middletown students perform above the state's proficiency level; outperform Pennsylvania students statewide; and enjoy more extracurricular programs. The Coalition's petition also pointed out that the Auditor General found that Steelton-Highspire has a financial deficit; is non-compliant with teacher certification requirements; and does not properly qualify its school bus drivers.

Steelton-Highspire and Middletown both opposed the Coalition's transfer petition. Steelton-Highspire denied the allegations, called them conclusions of law to which no response was required, and stated that the Auditor General's report spoke for itself. Middletown's answer stated that its proficiency in PSSA testing in reading and math fell slightly below the state average, as did its School Assessment Test scores. It furloughed teachers in 2010 because of budget constraints. Both school districts requested the trial court to deny the petition. Neither school district's answer contained new matter.

---

[1] The Coalition describes itself as "taxable inhabitants of the Borough of Highspire[.]" Coalition Brief at 5.

The parties stipulated that the Coalition satisfied the initial procedural requirements for a valid transfer petition. Specifically, the petition was signed by a majority of the taxable residents of Highspire; described the boundaries of the territory to be included in the transfer; stated the reason for the transfer; and identified the school district to which the transfer was proposed. In light of this record, the trial court then transferred the matter to the Secretary to consider the merits of the petition from an educational standpoint.

**Pre-Adjudication**

The Secretary appointed Deputy Secretary Matthew Stem to render a pre-adjudication determination on the educational merits of the Coalition's petition. The Secretary sent "Educational Impact Projection Questionnaires" to both districts and engaged PFM Consulting, LLC (PFM), to do a financial and a classroom audit of both districts. The Department's legal counsel advised the Coalition that it could not participate in PFM's review but that it would be given 30 days to comment on PFM's study. Reproduced Record at 1021a (R.R. __).

On July 18, 2017, PFM issued its report. The report compiled data on both districts with respect to student services, staffing, student attendance and graduation rates. It summarized the academic programs at the elementary, middle school and high school levels, as well as the school achievement and student growth data. The PFM Report focused on finances and made projections of tax revenue and state subsidies should the transfer occur. It then summarized "the review team's conclusions as to the educational impact of the proposed transfer given the instructional and financial changes" that would result in each district. PFM Report at 41; R.R. 1070a. The "review team" concluded that the transfer would negatively

3

affect the students remaining in Steelton-Highspire because of its impact upon the district's "financial flexibility." *Id.* at 48; R.R. 1077a.

On February 2, 2018, Deputy Secretary Stem issued a pre-adjudication determination that the proposed transfer of Highspire students lacked educational merit. His decision referred to documents submitted by all three parties and the PFM Report. He acknowledged that Middletown produces better academic results than does Steelton-Highspire, which favored the transfer. However, the Deputy Secretary found that Steelton-Highspire's loss of revenue from the transfer would have a negative impact on the students remaining in Steelton-Highspire, which is on the Secretary's financial watch list.

### Adjudication

The Coalition requested an administrative hearing on the Deputy Secretary's decision, and the Secretary granted the request.[2] He appointed a hearing officer, who convened a hearing on June 11, 2018. The parties agreed to proceed with "a joint stipulation with documents referred to in the stipulation copied on a [compact disc]," which was entered "into the record as a joint exhibit." Notes of Testimony, 6/11/2018, at 6 (N.T.\_\_); R.R. 1344a. The stipulation accepted some of Deputy Secretary Stem's 257 findings of fact. However, it also stated that the "parties are not stipulating to the accuracy or the relevance of the facts or documents subject to these stipulations and the parties explicitly reserve the right to object to facts or documents on these bases." Stipulation ¶9 at 1; R.R. 59a. On July 25, 2018, the parties submitted a second stipulation of facts with exhibits, which added two documents to the evidentiary record.

---

[2] "Actions taken by a subordinate officer under authority delegated by the agency head may be appealed to the agency head by filing a petition within 10 days after service of notice of the action." 1 Pa. Code §35.20.

4

Thereafter, the parties submitted briefs with proposed findings of fact and conclusions of law. The Coalition argued that the PFM Report constituted inadmissible hearsay because it was prepared by anonymous individuals of unknown qualifications who did not sign or date the report. The Coalition argued that the PFM Report was tainted by this lack of transparency and, consequently, was unreliable and speculative. The Coalition further argued that the report's financial analysis was beyond the scope of the Secretary's "educational merit" review. The Coalition argued that the educational information in the PFM Report demonstrated that Middletown achieves an educational outcome for students that is superior to that achieved by Steelton-Highspire.

Steelton-Highspire argued that an assessment of the educational merit of the proposed transfer should not be limited to a consideration of Highspire students but should also consider the students remaining in its district. It argued that its educational programs are comparable to Middletown's notwithstanding its financial challenges. The reduction in student population would reduce Steelton-Highspire's educational responsibility, but the concomitant loss of revenue would adversely affect its finances. It predicted teacher layoffs and an increase in class size.

Middletown argued that the proposed transfer would strain its facilities, staff and programs. Specifically, the transfer could crowd its elementary school buildings; could end its Head Start program for lack of space; could increase special education, technical and transportation costs; and could curtail supplemental education initiatives at the secondary level. The increase in tax revenue and state subsidies would not be sufficient to take on 276 students from Highspire. Middletown also predicted an increase in class size.

5

On January 16, 2019, the Secretary issued an adjudication that affirmed Deputy Secretary Stem. It addressed each of the Coalition's contentions.

The Secretary first addressed the Coalition's contention that a study of finances falls outside the scope of "educational merit." The Secretary reasoned that the Public School Code of 1949 (School Code)[3] states a preference for financially stable school districts. Steelton-Highspire is on the Department's "Financial Watch Status" list, and the proposed new district would strip Steelton-Highspire of 30% of its real estate tax revenue and 40% of its earned income tax revenue, for a total of $1.6 million per year. The school district's state education subsidy might be reduced by $2 million per year. The Secretary opined that the School Code requires the Department to assist school districts confronting financial hardship.

Second, the Secretary addressed the Coalition's objection to the admissibility and quality of the PFM Report. The Secretary found that the Coalition agreed to enter the PFM Report into the record, subject to its hearsay objection. Because the Coalition chose not to examine a witness from PFM who was made available for questioning, the Secretary rejected the Coalition's objections to the PFM Report.

Finally, the Secretary addressed the educational merits of the Coalition's proposed transfer. He explained that the factors historically found relevant to educational merit include elimination of discontinuous boundaries of an existing district; unifying students in one municipality into the same school district; and improving student transportation. None of these factors were relevant to the Coalition's petition. Nevertheless, the Secretary agreed that the proposed transfer

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 - 27-2702.

6

would provide a better education for the Highspire students, which is an appropriate factor in considering its educational merit.

However, the Secretary also found that the transfer of Highspire students to Middletown would have an adverse financial impact upon Steelton-Highspire, which was already on the Department's financial watch list. This adverse financial impact to Steelton-Highspire outweighed the educational benefit to Highspire students. Further, the PFM Report noted that Middletown's elementary schools were close to capacity. The Secretary agreed that the addition of Highspire students could lead to an increase in class size at Middletown. This also weighed against the educational merit of the transfer petition.

The Secretary concluded that the educational merits of the petition for the transferring Highspire students did not outweigh the potential for detriment to the students remaining in the Steelton-Highspire district. The Secretary denied the Coalition's challenge to the determination of Deputy Secretary Stem. Based on the Secretary's adjudication that the petition lacked educational merit, the trial court denied the Coalition's petition.

## Appeal

The Coalition appealed the trial court's order, raising three issues.[4] First, it argues that the Secretary erred in focusing upon the financial condition of Steelton-Highspire in assessing the educational merit of the Coalition's petition.

---

[4] Because the trial court's role in evaluating "educational merit" is purely ministerial, we review the Secretary's denial of the petition pursuant to Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704, governing Commonwealth agency actions. Section 704 restricts our review to determining whether constitutional rights have been violated, whether the adjudication is in accordance with the law, whether the proceedings relating to practice and procedure before an agency were violated and whether the necessary findings of fact are supported by substantial evidence. *Id*.

7

Second, it contends that the Secretary erred in considering the PFM Report. Third, it asserts that the evidence of record supports the conclusion that the petition has educational merit.

## Analysis

We begin with the relevant law governing transfer petitions. Section 242.1 of the School Code authorizes the "[e]stablishment of independent districts for transfer of territory to another district." 24 P.S. §2–242.1.[5] Subsection (a) sets forth the procedures for transfer and states as follows:

> A majority of the taxable inhabitants of any contiguous territory in any school district or school districts, as herein established, may present their petition to the court of common pleas of the county in which each contiguous territory, or a greater part thereof, is situated, asking that the territory be established as an independent district for the sole purpose of transfer to an adjacent school district contiguous thereto. Where the territory described in any such petition is to be taken from two or more school districts, such petition shall be signed by a majority of all the taxable inhabitants of the part of each school district which is to be included in such independent district for transfer. Such petitions shall set forth a proper description of the boundaries of the territory to be included in such proposed independent district, and the reasons of the petitioners for requesting such transfer to another school district and the name of the district into which its territory is proposed to be placed.
>
> The court shall hold hearing thereon, of which hearing the school district or districts out of whose territory such proposed independent district is to be taken and the school district into which the territory is proposed to be assigned, shall each have ten days notice. In all cases where an independent district is proposed for transfer from one school district to another, *the merits of the petition for its creation, from an educational standpoint, shall be passed upon by the Superintendent of Public*

---

[5] Section 242.1 of the School Code was added by the Act of June 23, 1965, P.L. 139.

8

*Instruction[6] and the petition shall not be granted by the court unless approved by him.* The court of common pleas shall secure the reaction from the Superintendent of Public Instruction upon receipt of the petition properly filed.

The court, in its decree establishing such independent district for transfer purposes, shall also determine the amount, if any, of the indebtedness and obligations of the school district, from whose territory such independent district is taken, that said district shall assume and pay, and, a statement prorating the State subsidies payable between or among the losing district or districts and the receiving district.

In all cases where such proceedings result in the creation and transfer, by decree of the court, of an independent district, the cost and office fees shall be paid by the petitioners or, otherwise, by the receiving district. Such independent districts created under the provisions of this act shall not become an operating school district but will be created for transfer of territory only.

24 P.S. §2-242.1(a) (emphasis added). In sum, the trial court determines whether a petition meets the procedural requirements of Section 242.1(a) of the School Code. *Id*. If the requirements are met, the trial court transfers the matter to the Secretary to rule on the educational merits. If the Secretary determines the transfer lacks educational merit, the trial court must deny the petition.[7]

Section 242.1(a) of the School Code requires the Secretary to "pass[] upon" the "merits of the petition … from an educational standpoint." 24 P.S. §2-242.1(a). The School Code does not define "merits ... from an educational standpoint," and so the phrase must be given its ordinary meaning. *In re Petition for*

---

[6] The Superintendent of Public Instruction is now the Secretary. *See* Act of July 23, 1969, P.L. 181, Sections 1 and 2 of the Administrative Code of 1929, 71 P.S. §§1037, 1038.

[7] If the Secretary determines the petition has educational merit, the trial court will order the establishment of an independent school district, prorate Commonwealth subsidies payable to the school districts at issue, and forward the matter to the State Board of Education for its review. 24 P.S. §2-242.1(a) and (b).

9

*Formation of Independent School District*, 17 A.3d 977, 985 n.10 (Pa. Cmwlth. 2011) *(Riegelsville II).*[8]  With respect to the Secretary's power to deny a transfer, this Court has explained as follows:

> [W]hen the Secretary exercises his [or her] discretion to determine whether a proposed transfer has "merit from an educational standpoint," he [or she] must be guided by the policy choices made by the legislature in the [School Code] and not by his [or her] own personal sense of what constitutes good education policy.

*Washington Township Independent School District v. Pennsylvania State Board of Education*, 153 A.3d 1177, 1184 (Pa. Cmwlth. 2017) (quoting *Riegelsville II*, 17 A.3d at 991).  This "manifest restriction" on the Secretary's discretion is "necessary lest the statute violate the proscription against delegating legislative power to an administrative agency."  *Id*. at 1184 (quoting *Riegelsville II*, 17 A.3d at 988-89).  With this legal framework in mind, we consider the Coalition's first issue on appeal.

The Coalition argues that the Secretary erred in focusing upon the finances of Steelton-Highspire.  The Coalition contends the Secretary should have considered only the educational impact on students.  In support, the Coalition cites *Riegelsville I and II*.  Steelton-Highspire and Middletown respond that *Riegelsville I and II* actually support the Secretary's adjudication.

*Riegelsville I*, 962 A.2d 24, involved a petition to transfer 60 students living in the Borough of Riegelsville from the Easton Area School District to the Palisades School District.  The Secretary found the proposal lacked educational merit, and the trial court denied the transfer.  Because the Secretary made his determination without findings of fact or conclusions of law, this Court concluded

---

[8] For consistency with the parties' briefs, *In re Petition for Formation of Independent School District*, 962 A.2d 24 (Pa. Cmwlth. 2008), will be referred to as *Riegelsville I*.

10

that the Secretary's determination was an invalid adjudication under the Administrative Agency Law. We vacated the trial court's decision and directed a remand to the Secretary to conduct a formal administrative hearing on whether the petition had educational merit.

Upon remand, the trial court conducted an evidentiary hearing on the question of educational merit and transferred that record to the Secretary to make findings of fact and conclusions of law. Again, the Secretary held the petition lacked educational merit, and the petitioners appealed. In *Riegelsville II*, 17 A.3d 977, we concluded that the trial court lacked jurisdiction to conduct an evidentiary hearing on behalf of the Secretary. Accordingly, we vacated the Secretary's second adjudication.[9]

In *Riegelsville II*, the Secretary concluded "that so long as the two districts affected by a proposed transfer are in 'general parity' there can be no transfer." 17 A.3d at 989-90. We held that the Secretary erred in using "his own personal sense of what constitutes good education policy" and the public interest. *Id*. at 991. To be constitutional, Section 242.1 cannot delegate legislative power to a public official. In fact, the phrase "merits … from an educational standpoint" was challenged in *In re Weaverland Independent School District*, 106 A.2d 812, 814 (Pa. 1954), as both vague and an impermissible delegation of legislative power. Acknowledging that a statute must prescribe "with reasonable clarity the limits of power delegated," our Supreme Court held that the phrase "educational merit" did not confer unlimited power upon the Secretary because Section 242.1 was concerned with "school considerations." *Id*.

---

[9] We noted that the parties could "stipulate to make the trial court's record the record before the Secretary on remand." *Riegelsville II,* 17 A.3d at 991.

The Coalition argues that *Riegelsville I* stands for the proposition that the Secretary's evaluation should focus on whether the proposed transfer will "advance the public education of the affected students[.]" *Riegelsville I*, 962 A.2d at 28. The Coalition also argues that *Riegelsville II* implicitly rejected the principle that the financial consequences of a transfer are relevant to "educational merit." It points out that once the transfer is approved by the Secretary, it is the trial court that orders the establishment of an independent school district and determines "the amount, if any, of the indebtedness and obligations of the school district, from whose territory such independent district is taken, that [the independent school] district shall assume and pay, and, a statement prorating the State subsidies payable between or among the losing district or districts and the receiving district." Section 242.1(a) of the School Code, 24 P.S. §2-242.1(a). The Coalition argues that the School Code separates the educational merits of a proposed transfer from its financial effects.

Steelton-Highspire and Middletown disagree. They acknowledge that in *Riegelsville II*, 17 A.3d at 985, this Court criticized the Secretary for addressing the petition "strictly in terms of its potential financial consequences." Here, they contend, the Secretary did not limit his analysis to financial considerations. They also argue that the School Code requires the Department of Education to assist school districts in dealing with financial distress. *See* Sections 601-A[10] to 695-A[11] of the School Code, 24 P.S. §§6-601-A - 6-695-A (addressing "School District Financial Recovery"). They argue that a school district's financial condition is an appropriate factor in evaluating whether a transfer petition has merit from an "educational standpoint."

---

[10] Added by the Act of July 12, 2012, P.L. 1142.

[11] Added by the Act of November 6, 2017, P.L. 1142.

12

The statutory scheme for review of a transfer petition involves work by the trial court, the Secretary and the State Board of Education (State Board). The trial court first determines whether the petition meets the procedural prerequisites. If so, the petition is transferred to the Secretary to consider its "educational merit." If the petition has educational merit, the petition returns to the trial court to decide the precise apportionment of the state education subsidy and the school debt. The trial court then provides this information to the State Board. The State Board does the final review, in which it addresses "whether the assignment of the newly-created independent school district to the receiving district would violate the adopted Board standards or express statutory standards that govern the organization of school districts." *Washington Township*, 153 A.3d at 1187. This Court has explained the State Board's work as follows:

> [T]he Secretary is to evaluate only the educational merit of the petition to create an independent school district for transfer purposes. Under Section 293.1 of the School Code, and based on the standards set forth above, the Board is reviewing not the petition filed and approved by the Secretary and the common pleas court, but an application for assignment of the newly-created independent school district to the designated receiving school district, as set forth in the common pleas court's decree. It must look at the proposed amendment to the organizational plan and determine whether the assignment of the newly-created independent school district to the receiving district would violate the adopted Board standards or express statutory standards that govern the organization of school districts. If allowing the assignment would not violate these standards, then the Board should approve the amendment "and direct the Council ... to make the necessary changes [to] the county plan." Section 293.1 of the School Code. If approval of the application would be contrary to these standards, then the Board should deny the application.

*Id.* at 1187-88 (emphasis omitted).

In *Weaverland*, 106 A.2d at 814, our Supreme Court held that the phrase "merits … from an educational standpoint" was not unconstitutionally vague and, thus, the words should be given their "ordinary meaning." Webster's Third New International Dictionary defines "educational" as follows:

> 1. of, relating to, or concerned with education or the field of education. 2. Serving to further education.

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 723 (2002). In turn, it defines "education" as follows:

> 1. The act or process of educating or being educated as: a: *obs*, the act or process of rearing up or bringing up … b: the act or process of providing knowledge, skill, competence, or desirable qualities of behavior or character or of being so provided esp. by a formal course of study, instruction, or training….

*Id*. at 723. This definition of "education," includes four discrete and numbered definitions with sub-headings. All refer to "course of study," "learning," "instruction," and "training." *Id.* The noun "merit" is defined as a "praiseworthy quality" or "worth *or excellence* in quality or performance." *Id*. at 1414 (emphasis added).

Here, the Secretary based his decision upon Steelton-Highspire's financial condition.[12] This is beyond the "school considerations" that the Supreme Court held to be the essence of "educational merit" in *Weaverland*, 106 A.2d at 814.

_____

[12] The legislature has directed the Department of Education to establish an early warning system to identify school districts with financial difficulties. Section 611-A(a) of the School Code, 24 P.S. §6-611-A(a). The Department provides technical assistance to remedy the financial problems, Section 611-A(b) of the School Code, 24 P.S. §6-611-A(b), and ensures "the delivery of effective educational services to all students enrolled in a school district in financial recovery status [or] receivership…." Section 622-A of the School Code, 24 P.S. §6-622-A.

Nor does a school district's financial condition meet the ordinary understanding of "educational," which focuses on instruction, course of study and learning.

Steelton-Highspire and Middletown argue that the Secretary must consider the financial health of the two districts affected by a transfer. They also argue that the Secretary did not infringe upon the trial court's obligation to "determine the amount, if any, of the indebtedness and obligations" of Steelton-Highspire to be assumed by Middletown or the proration of "the State subsidies payable between or among the losing district or districts and the receiving district." Section 242.1(a) of the School Code, 24 P.S. §2-242.1(a). We disagree.

In *Riegelsville II*, the Secretary rejected the transfer because the quality of education the transferred students would receive in the new school was not markedly better than what they already received. Here, the Secretary expressly found, as fact, that the transferring Highspire students will have access to a higher quality education at Middletown. The Secretary's understanding of "educational merit" shifts with each transfer petition. The Secretary's decision on the Coalition's petition effectively nullifies the possibility of any transfer of students from a school district in financial peril unless agreed to by that district.

Steelton-Highspire has a long history of running structural deficits and is in financial watch status.[13] The Secretary explained as follows:

> I cannot ignore that if granted, this Petition would punch a material hole in Steelton-Highspire's budget on account of a loss of revenue. There was no evidence of easy ways in which Steelton-Highspire would be able to save money as the result of

---

[13] Highspire students make up 17% of the Steelton-Highspire population, but Highspire taxpayers provide 34% of its tax base. The transfer could reduce the school district's taxable revenue by approximately $2 million and its state subsidy by approximately $1.6 million.

15

the transfer of these students without cutting education programs to the students that remain.

Secretary Adjudication at 35; R.R. 2812a. The Secretary presumed that the loss of revenue to Steelton-Highspire, due to the reduction in tax revenue and state subsidies, would reduce the educational opportunity to students remaining in Steelton-Highspire. The Secretary also presumed that the reduction in student enrollment would not create cost saving benefits to Steelton-Highspire. Notably, there are no specific findings to support those presumptions.

The Secretary found that both school districts offer a comparable range of academic courses and programs. Both districts accommodate students of various abilities and interests. Both districts have supported parental involvement and an infrastructure to support students. The Secretary explained:

> My sole role in this matter is to pass upon the educational merits of the Petition. Looking at the clear educational policy choices made by the legislature in the School Code, it is clear that the Petition would offend these choices by leaving the remainder of [Steelton-Highspire] financially undermined. The legislature clearly intended to foster the creation of financially stable school districts for educational policy reasons. While by some relevant measures [Middletown] produces better *academic* results, the *educational* merits of the Petition as a whole do not outweigh the clear educational demerits of the Petition.

Secretary Adjudication at 36; R.R. 2813a (emphasis in original).

The Secretary refused Highspire students the opportunity for better "academic results" on financial grounds. The Coalition explains that the Secretary's adjudication has created a "financial paradox" because Steelton-Highspire is "projected to continue to experience a persistent structural deficit *with or without the transfer*[.]" Secretary Adjudication, Finding of Fact No. 98; R.R. 2794a (emphasis

16

added). Stated otherwise, the educational opportunity denied Highsphire students will not solve the district's financial challenges. The Secretary justifies this outcome, declaiming that "educational" is different from "academic." Perhaps this is so, particularly given the extracurricular opportunities available to students in both school districts. However, we disagree that "educational" is broad enough to encompass "financial" and reject this conclusion of the Sectretary.

The Secretary found that the transfer has educational merit for Highspire students, and this was based on objective and historical data. However, the Secretary found this educational merit was outweighed by PFM's financial projections, which are conjectural. In any case, once educational merit is found, it is the trial court that must "determine the amount, if any, of the indebtedness and obligations of the school district, from whose territory such independent district is taken, that [the independent school] district shall assume and pay, and, a statement prorating the State subsidies payable between or among the losing district or districts and the receiving district." Section 242.1(a) of the School Code, 24 P.S. §2-242.1(a). This information is then provided to the State Board for its review.

It makes little sense for the Secretary to speculate on the debt of the school districts and the proration of State subsidies when it is the trial court that must make specific findings on those amounts and then furnish the totals to the State Board for its review. Categorically, the financial concerns that informed the Secretary's decisions are not part of his review of whether a transfer petition has merit from an educational standpoint.

## Conclusion

For all the above reasons, the Secretary erred in finding the educational merits of the transfer to be outweighed by PFM's adverse financial projections,

17

which are conjectural and beyond the scope of the Secretary's "educational merits" review. Accordingly, the order of the trial court is reversed and the matter is remanded to the trial court for it to enter a decree establishing an independent school district pursuant to Section 242.1 of the School Code, 24 P.S. §2-242.1.[14]

_____
MARY HANNAH LEAVITT, President Judge

---

[14] Because we reverse on the basis of the Coalition's first issue, we need not address the remaining issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Formation of : 
Independent School District Consisting : 
of the Borough of Highspire, Dauphin : 
County, Pennsylvania : No. 242 C.D. 2019
:
Appeal of: Highspire Education :
Coalition :

## **O R D E R**

AND NOW, this 2nd day of March, 2020, the order of the Court of Common Pleas of Dauphin County (trial court), dated January 31, 2019, is hereby REVERSED, and the matter is REMANDED to the trial court in accordance with the instructions set forth in the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge